Good morning, Your Honor. May it please the Court, Frank Gregoric for the appellees. I would like, if I might, Your Honor, to reserve four minutes' time for my rebuttal. All right. Watch your clock so you don't lose it. I'll be watching carefully, Your Honor. Thank you. Thank you for that reminder. Your Honor, there are a number of issues before us today on this appeal, and I'd like to start with the one which has been for this panel, and that's the issue of the statute of limitations. In Lampf v. Plava, the Supreme Court had chosen Section 9E of the 1934 Act to cover actions brought pursuant to that Act. The Act provides, in short, that an action shall be brought within one year from the date of the discovery of the injury or from three years of the date of the circumstances underlying the claim. The three-year statute, or the period of repose, is not at issue here. The one-year period of limitations is. The pertinent facts in this litigation on this issue are these. First, Your Honor, as the Court below noted, the financials before the Court were not consolidated. Separate financial statements were filed by SPFC and also by Imperial Credit. But on the statute of limitations. Yes, Your Honor. Which standard of notice are we supposed to apply, actual or inquiry? And a related question is, our Court issued a case that speaks to that point. Yes, Your Honor. Today, I'm not sure how clearly it speaks to the point. But I think that's a preliminary question that we need to look at. I think that's correct, Your Honor. The case Your Honor is referring to, which I think is slightly confusing, is Berry v. Valens back in 1999. Actually, what we're referring to is a case called Libet Holdings that was issued yesterday. So you probably don't know about it, and we'll probably have to deal with it. We're not going to hold that against you. Thank you. Thank you, Your Honor. Two brief facts in answering that question. Number one, the amended complaint naming KPMG was filed in February 2001, which is less than one year after expiration of the stay of discovery that had been imposed in this case. And it was less than approximately two or three months from the date upon which the plaintiffs obtained actual knowledge of KPMG's participation in the fraudulent scheme in or about December when they had made their second production documents. There's a dispute in the briefs about, just to jump some of the issues, the main dispute is whether you were bound to rely on a complaint filed in the other case. And then there's a sub-dispute about when which complaint in the other case and whether it – and whether the – when the actual complaint was ultimately – which complaint was ultimately approved and what. Exactly, Your Honor. And as far as I can tell, the fourth complaint is not in the record. Is that true? That's correct, Your Honor. KPMG's not here. It's a little hard for us to judge anything about it. That's correct, Your Honor. Additionally, what is the – why does this matter? What's the timing difference between the two complaints? With respect to the first question, Your Honor, the Court below, I believe, erroneously relied on the Third Amendment complaint. And I believe that the Court acted erroneously in that belief because it went on to say that plaintiffs should have been able to rely upon this complaint because, after Well, I think a close reading of that case, which is also a kind of a confusing decision, makes plain that Judge Marsh upholds not the Third Amendment complaint but the Fourth Amendment complaint. And he does not even uphold the Fourth Amendment complaint in isolation. But what's odd about that is that the language that you have in your amended complaint against that names KPMG virtually tracks the complaint that is in the record, which I assume is the Third Amendment complaint, which was filed well before the one-year period began to run. It was filed, Your Honor, in approximately September of 1999. And, frankly, we had tried – an issue that arises here is that Judge Wilson also thought that we had some sort of benefit here because there was this parallel proceeding of the yarding case. And there was a bankruptcy proceeding itself. But – that's correct, Your Honor. But, Your Honor, we had no access to the documents in that case. I am – to give you an example – Would you let us say that in your brief? Because the appellees say that nowhere have you represented that you did not have access to those documents. I believe that we did, Your Honor, in my – in my submissions to the Court. As I know from – My understanding is that they were under protective order. Exactly, Your Honor. I had – when I had heard that there might be a Third Amendment complaint, I called Plaintiff's counsel because, of course, it's a relatively small bar. And I was told that I could not have a copy. And I – when I asked why, I was told that there was a confidentiality in the order in the case. And besides that, they were not inclined to cooperate. So – I'm still confused about why the third or fourth one matters. I don't think the third one matters, Your Honor. Why does it matter whether it's the third or the fourth? Why does that matter? I think because, Your Honor, the court below was trying to indicate that we were on inquiry notice as of the time of the filing of the third complaint. All right. Suppose you were on inquiry notice at the time of the filing of the fourth complaint. Would that change anything? Would that still be too early? Too – so early that you'd still be late? It would be more than a year before we – it was filed more than a year before. So what difference does this make? It makes about no difference. Is that right? Except for the fact that, Your Honor, the court, Judge Wilson below, in saying that we should be – we should be looking at this complaint, assumed that that complaint in and of itself would have been sufficient for us to file a sustainable claim against APMG. But the fourth complaint would have been. You're still in the same time problem. I think the – we would still be in the same time problem, Your Honor. But I don't think we can make the determination of whether or not the fourth amended complaint would have been sufficient to have allowed us to plead a sustainable claim for two reasons. Number one, as Your Honor has indicated, the fourth amended complaint is not part of this record. Perhaps more importantly, however, is Judge Marsha – the nature of Judge Marsha's decision, Judge Marsha makes plain several times in his reported decision that he's upholding not only the fourth amended complaint, but the fourth amended complaint as supplemented. So we don't know, even though Judge Wilson said we should have somehow been placed on notice by that, we don't know what it was that – what those other documents were that the court had. But ultimately, your position is, as I understand it, that you can't be bound to proceed on the basis of a complaint because a complaint is only a complaint. And if you didn't – no matter how detailed and whether it's approved as being sufficient to meet a pleading standard, you need to do some sort of due diligence with regard to what's behind it and know that it's substantiated by the record. Is that your ultimate position? Exactly, Your Honor. I think that's true. I think Rule 11 imposes upon us the obligation when we see something like that, another pleading, to treat it as it was. And do we have any case law – is there any Ninth Circuit case law on this question? I'm sorry, Your Honor. Is there any Ninth Circuit case law on the question of whether if there's a sufficiently detailed complaint by a competent lawyer, you need to rely on it as inquiry notice, or whether you can do your own discovery first? I did not see any, Your Honor. We checked for that, but we did not see any. We believe, Your Honor, that we did have a – while Judge Marsh could look at that complaint and accept the allegations as true, as the court must in ruling on a 12b-6 motion, we, on the other hand, as counsel, have a different obligation to conduct an independent inquiry. And the problem we have at that point, Your Honor, is that we – at that point in time, is that we were, of course, affected by the State. There wasn't anything that we really could do at that point in terms of further examining whether or not KPMG, with respect to its audit of the ICE – Wait a minute. The State didn't go into effect until you filed the amended complaint against KPMG. And what you filed, what was that based on? What additional – There were two States. Pardon me? There were two States, Your Honor. Right. There was the earlier State, but then it was – you had 12 months in between that one and the time that you caused the second State to go into effect by filing the amended complaint. So what – what actually occurred that constituted your due diligence to put you beyond inquiry notice that caused you to file the amended complaint when you did? Once the State was lifted, Your Honor, in February of 2000, when Judge Wilson upheld our original complaint, we then conducted discovery against the defendants and also KPMG and various third parties. An issue which flavors the Court below's opinion is whether or not the – whether or not plaintiffs actually acted diligently in conducting discovery and also the prosecution of this case. And I think the record shows that we had. Well, he's down to the contrary. I understand that, Your Honor, but I think that the papers submitted by plaintiffs to the Court below contradict the eventual finding by the Court. We ended up looking at several hundred thousand pages of documents which were provided to us eventually by the trustee in the bankruptcy proceeding. In essence, we were given entree to a warehouse from – of several thousand boxes, from which we called a few hundred, and ended up reviewing and analyzing those. We also obtained documents from KPMG, and it's the first production in about October, another production in December. It was at that point, after we got that second production, that we were able to assure ourselves that we had fulfilled our obligations to conduct our independent Rule 11 review and to find that KPMG actually had, in fact, acted with Scienter with respect to their audit of ICII. And that's the importance of the first day, Your Honor. We couldn't do anything until that stay was lifted in February of 2000. One thing that's confusing here, and it seems to matter a lot, is whether you were really worried about the audit of ICII or whether you were really worried about the audit of Southern Pacific. My understanding is that, from looking at the complaint, that most of the concern is with KMPG's audit of Southern Pacific, not of ICII. And even insofar as it was an audit of ICII, it was really a concern about Southern Pacific. I understand there were different audit teams, but you're – but – and so I look carefully at the complaint for that reason. But it seems to me that the complaint with regard to KMPG is really focused mainly on Southern Pacific. Your Honor, these were, in fact, unconsolidated financials, and they were conducted by separate teams. And Your Honor is also correct that there was a substantial concern as to what had happened, what the real status of SPFC was. But I think the Lentel Court, which recently issued its decision in the Second Circuit, appropriately stated what our job was. And our job was to find to state with particularity facts that related to the specific security at issue. And we represent the shareholders of ICII, and our concern was with the validity of KPMG's audit of ICII. Now, that included questions relating to SPFC and what KPMG – and what ICII knew about the problems down at KPMG – at SPFC, but those are different issues. The whole basis of your – the whole basis, your whole theory was that the misstatements in the SPFC complaint caused the ICII statements to be artificially inflated. That's the theory of your case. That is the theory of the case, Your Honor. But what we needed to establish was KPMG's scienter with respect to the conduct of their audit of ICII, and we couldn't do that until we saw their work papers. Once we saw their work papers, the benefit that we'd received from them was, in particular, as an example, and we cite this in our reply papers, is that we were able to determine that they had, in fact, reviewed board minutes of ICII so that they were able to ascertain the knowledge of ICII and the ICII defendants with respect to the problems at SPFC. All right. I think you should move to your other issues because you're running out of time. Yes. Your Honor, if I might just wrap up quickly on that point. I think the – It's your choice. Thank you, Your Honor. I think the point to be made there is we think it should be an actual knowledge standard. We think the bar has been raised by the PSLRA and by also the decisions of this case.     It has an effect on the public opinion, and it has an effect on the public opinion with respect to auditors. But that's totally impossible because then you just have people who are sticking their head in the sand and discovering it when it's continued to be discovered. I don't think that that's true, Your Honor. I think what generally happens as a practical matter is that when a situation arises that needs to be examined, it is, and people don't stick their head in the sand as a practical matter. And that would be good if you moved to your other issues. Yes, Your Honor. Your Honor, we touched briefly upon plaintiff's diligence in their – in the prosecution of this case, and I just wanted to finish up that point. Why – on the question of whether the judge abuses discretion in not allowing discovery to continue or during the stay period, lifting the stay, why does diligence matter? Where does the diligence standard come from there? If you had – if you would otherwise have had X amount of time to do discovery and you don't because of the stay, and you – suppose you scheduled your diligence in your discovery in a peculiar fashion and back-ended everything, and even if that was not diligence, why – why are we asking about diligence? Why are we just asking about why should you at least have whatever time you were going to have? Because, Your Honor, the courts in dealing with this issue have – have asked the question in the context of whether or not it could be stated by the court that as a matter of law, a plaintiff with the exercise of diligence could have discovered the facts in question. The stay becomes important, especially as the Court noted in Lentell just recently, because where you have a situation where – one of the things you have to factor into, whether or not the plaintiff exercised diligence, is what they could have achieved through the exercise of diligence. And then you look at whether or not it was necessary to have compulsory process in order to obtain the necessary information. Counsel, you make – you argue throughout your brief on this point that Judge KPMG was to be in the jury for two years. Now, I don't understand how you can make that argument with a straight face, given that he issued a minute order on May 2, 2001, saying that he was granting both the motion for summary judgment and KPMG's motion to dismiss and vacating the pretrial conference and the jury trial. I mean, were you literally sitting on tenor hooks waiting for two years for Judge Wilson to allow you to have discovery on issues on which he'd granted judgment to somebody else? No, Your Honor. And that argument seems completely disingenuous to me. And you make it throughout your brief that he didn't rule – you say it straight out several times. He didn't rule for two years. He didn't rule for two years. And you know that's just not the case. You know that implicitly, by granting judgment and dismissing the action, he was saying, you don't get discovery. And I think you should concede that. Your Honor, I think perhaps we didn't express ourselves clearly enough. What ended up – what happened was we had made a motion to lift the stay and to continue the trial date in order to allow the addition of KPMG to play out so we can see who the parties were going to be and get the pleadings at issue. We made that issue well before the hearing on the motion for summary judgment. During the hearing on the motion for summary judgment, Judge Wilson at one point had said that if you had wanted that, you should have made a motion. At that point, I rose and had told the Court that, in fact, we had. And, in fact, on the civil minutes of the proceeding, that motion is listed. He did not, as you also accuse him of doing, forget about that motion. It was listed on the civil minutes of the proceeding dated April 30th. And this is obviously something prepared since I'm a former district court judge in this district before the hearing even began. So he had that motion in front of him. But it would obviously be mooted if he granted summary judgment and dismissed the case. What did he do two years later that you characterize as having ruled on it two years later? At the hearing, Your Honor, the judge had indicated that he had not. When I rose to tell him that we had. I understand what he did at that hearing. What I'm asking is you say that he ruled on it two years later. What did he do two years later? Two years later, I think there was an order indicating that the motion was denied. No. Two years later, there were findings of facts and conclusions of law issued, which is frequently the case. That a minute order demonstrating what the judgment is comes out. And as he says, court will issue formal orders. And that's what he did. He writes it all up. Sometimes it takes a long time. I think, Your Honor, our point is that the situation was similar to that found in Garrett where the court first ruled on the motion for summary judgment and then ruled on our application for additional time. I don't see how you can read that from the language of this order. I mean, I really find it just, I mean, I think you've already conceded. But you surely, you couldn't have been sitting there waiting for him to grant you discovery after he grants judgment to the other parties. No, Your Honor. But before the hearing, we had filed an application in order to extend the time, in order that we can allow these various issues that had been caused by the addition of KPMG to be sorted out. And those issues involved the potential mediation that the defendants had asked for, how we were going to deal with KPMG in the context of discovery. The defendants had told us that they did not want to have their people sit for depositions twice. Why didn't you make a motion to compel the ICII people to produce their witnesses and take it to the magistrate judge like everybody else does when they have discovery disputes? At that point, Your Honor, I don't think we had a magistrate. And that's why we filed the motion to lift the stay or the alternative to extend the discovery deadline. Oh, I think you would have had a magistrate because magistrates are assigned at the same time as the district court judge by the wheel at the time that the complaints filed. So I think you would have had a magistrate. You could go. But that's beside the point. Let me ask you something else. You got Judge Wilson's scheduling order, right? Yes, Your Honor. And he gave you a certain – he gave you certain deadlines by which you needed to find your expert witnesses and providing expert opinions. He ultimately, as I understand it, granted summary judgment against you for a failure of producing an expert who could testify as to the value of the residuals in a way that would, you know, put before him some evidence that he could determine on the basis of that evidence you should go to trial or not. And you never did that. And you never did it by the deadline that you had to do it. Your Honor, if I might just answer that question briefly because I see that I'm out of time. The court did not provide us with a detailed schedule as to when certain events were going to occur. You didn't have a scheduling order? There was a scheduling order, Your Honor, which simply set the date of the pre-trial conference and then we counted back. My understanding of Judge Warhol's question is by whatever deadline. Certainly the experts had to be, reports had to be in before the stay kicked in. So the stay may have been relevant with respect to other things, but it wasn't relevant with respect to the experts. Is that much correct? I think that's correct. Okay. So therefore, with regard to the expert question, the grant of the stay or not grant of the stay is irrelevant and the question is did you have expert testimony that would have sufficed at trial? That's the ultimate issue. Your Honor, we believe that we had testimony on the residual expert on the residual issue. Okay. So this is my question about that insofar as I can understand it and I may just be off. But basically, this is Merrick, right? This would be Mr. Moore, Your Honor. He was the expert on the residual evaluation. I thought he was the expert on the accounting, the fact that the accounting wasn't done properly. That was he also did that, but he talks about the residuals in the context of that of his report. And the evidence we believe that we presented as to the problems with respect to the residuals is really threefold. One deals with the internal documents that we were getting as a result of our discovery. We had the reports of Mr. Horowitz, who was an employee of the company, who was charged with looking at whether or not those residuals were overvalued. We also had... But we know that at some point in the class period they were overvalued because the whole company collapsed one day. Yes, Your Honor. So that doesn't in some way seem to me to be the most significant question because maybe they were overvalued for the whole class period or maybe they were only overvalued for part of the class period, but they were overvalued. I'm sorry? I was about to say, Your Honor, directly addressing your question, that Mr. Moore indicates based upon his examination of the record, based upon ICII's own overstatement of its own residuals and also the fact that it jointly owned a residual with SPFC that ICII wrote down by 60 percent, but that SPFC did not and that would have resulted in a massive write-down at SPFC that the problem existed at the very beginning of the class period. All right. But then there's the second set of questions, which is what Merrick was addressing, which is essentially how did this impact on the investor's public. Yes, Your Honor. And that's where I begin to have problems because Merrick's evidence was premised on the notion that the valuation was always zero and that's why he didn't have to do any more careful study of what the value was relevant to any particular representation or misrepresentation and market. Is that accurate? That's why he did not do an event study, Your Honor. He did do an event analysis. Okay. My economics aren't all that sophisticated, but let me tell you my very simple-minded view of that. Yes, at the end of September 15th, the valuation may well have been zero, was zero, but how does that cover anything during the rest of the class period? I mean, it's perfectly possible that they were losing money at some ascertainable rate that you could see in January that if they kept losing money at that rate, they would be out of money by September. But that isn't to say that the value was zero in January. They could have had plenty of cash in January. They were just losing money at a rate that they were going to be out of cash by September. Or they could be wrong without having committed fraud. They could have been just wrong. Your Honor, I think in this circuit, one of the best evidences of whether or not people are speaking the truth or not is whether or not they're receiving contemporaneous reports indicating that the statements that they're making are wrong. And the what our position was that the Horowitz analysis and also Mr. Moore's separate analysis of the ICI indicates that at the very beginning of this class period, these residuals were grossly overvalued. I understand that. I understand that. Even if it was grossly overvalued, it still doesn't mean it was zero. That's where I'm having my problem, with Merrick's methodology. How could he possibly say with – and I did look at the report and I didn't see where he substantiated it. Where would he get the idea that it was not only zero in September but zero in January? I think, Your Honor, he was looking at both Mr. Moore's report and also the facets that he recites in his event analysis, which is part of his opinion. Let's assume for a minute that there is no substantiation for that, that it was zero throughout the class period. Then what does that mean with respect to your summary judgment against you? Could you still survive summary judgment if you had no evidence with regard – no cognizable evidence with regard to the actual value of the residuals at any period before the end? I think, Your Honor, that we do need some evidence of the actual value before the very end. And I think we have that, if I understand your question. Where? That's what I want to know. Where? I think we look to the Horowitz documents that were being produced inside the company and we also look at Mr. Moore's separate independent analysis. But I don't mean just the value. The effect of the value on the stock, because that's ultimately your burden. You have to show causation. So where would that be coming from if Merrick's calculations don't work? Well, we have to show you, Your Honor, that the misrepresentations touch upon the loss. Right. And we think that we do that both through Mr. Moore's analysis of the company and also Mr. Merrick's statements as a charter financial analyst. So basically you think you've done enough to shift the burden and then the burden is on the other side. I think so, Your Honor. And in this case, there is some discussion, hypothetically, about the potential impact of various factors, such as the Russian financial crisis and the lending corp problem, et cetera. But there was never any substantiation that those problems had any impact during the class period by the defense on these issues. All right. Cancel your way over your time. I'm sorry, Your Honor. Thank you. Are you dividing your time? Yes, Your Honor. Okay. What is the division so we can keep track? Your Honor, may I please the Court? Gareth Evans from Gibson, Dun & Crutcher on behalf of KPMG. And I have agreed to cede 10 minutes of time to Mr. Levin, and I'll try to keep a close track of that. Well, have you read our case that came down yesterday? Yes, I did. And in the case that came down yesterday, Libet Holdings, as in Berry v. Valence Technology, which the Ninth Circuit previously issued, the Court ultimately did not decide between an actual notice or an inquiry notice standard in terms of the time for the statute of limitations to begin to run under Section 10b, because in both cases the Court found that the result would be the same under either test. And as I'll get to a little later, as I'd like to address some of the other arguments first, I believe that's the same case here. It's similar, and that is that the statute of limitations ran over a year, whether you apply an actual notice or an inquiry notice-slash-diligence standard. And I'd like to address the PSLRA argument that the appellants make, as well as the ICII work papers. Before going into that, I think it is important to keep in mind the purposes of having statute of limitation. Obviously, it's to prevent the unfairness of bringing a late claim when memories have faded, employees may be gone, and evidence may be lost, promote diligence in bringing claims, and prevent the retroactive enforcement of contemporary standards on an old case. And I believe all of those factors are in play here in this case. And in a strange sort of way, in this case, precisely for the reason that you claim they should have charged you earlier, your client really doesn't have these problems because he was being charged in the other case for essentially the same thing. Yes. So in terms of preserving evidence and all that, there's really not too much in way of equity that's about this. Well, we do have, as has been pointed out, we have some different witnesses in terms of different audit teams. We also have a sea change in the environment, because you have the Enron and World Com scandals, followed by the enactment of the Sarbanes-Oxley Act in 2002. And this all – and so we have a case brought before Sarbanes-Oxley that the plaintiffs are trying to litigate. That can't be relevant to the limitations period question, because the case could be brought one day and tried five years later. I mean, that's really not. Right. It's applicable to one of the – one of these principles. Going to this idea that the statute of limitations should be stayed while a PSL – or should be told why a PSLRA, Private Securities Litigation Reform Act, discovery stays in place, I think that completely turns the PSLRA on its head. The PSLRA requires plaintiffs to adequately plead all elements of a Section 20B claim without taking discovery. So tolling the limitations period so that plaintiffs can conduct discovery to bolster their claims would directly contradict the PSLRA's requirement that they adequately plead the claims without discovery. In fact, the PSLRA requires dismissal when a plaintiff cannot plead a claim within the statutory timeframe. It doesn't provide for an extension of time. In this Court, in the S.G. that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed. Turning to the argument that the plaintiffs could not plead scienter until they received the ICII work papers, I think this is a red herring. And I think it's – it's obvious because the alleged fraud in the imperial credit industries, financial statements, is the alleged accounting fraud in the Southern Pacific funding. This is what I find the hard question. I mean, so far everything you're saying is making sense. But you're asking them to rely on the pleadings in another case. And no matter how specific the pleadings and no matter – when the judge approves the pleadings, all he's doing is approving the fact that they're facially adequate. But he's certainly not approving that there's anything behind them. They could be lies. So the question is, what is – doesn't the plaintiff in this case have at least some responsibility beyond reading the complaint in another case to ascertain what the facts are? Well, I think what the complaints in the Southern Pacific funding case show is they're a benchmark. They show what an ordinary investor with reasonable diligence could do. And if you apply the inquiry diligence statement – Well, in fact, in that case, they did have discovery. I mean, whether – you're saying they should be – and these people did not have access to their records. Is that much true? I think there were a couple of discovery stays in place in that case. But they had discovery. You're saying they didn't have discovery? Well, the plaintiffs here certainly had access to the other pleadings where other discovery had been made. Well, do they have access – do they have discovery until the complaint is allowed to – is not dismissed? I mean, the PSLRA has this automatic stay. So while they're – well, as I understand it, with each of these complaints, they were dismissed. And then the plaintiffs filed another complaint. And each time, that triggers the automatic stay. So in fact, they're filing the complaint not based on having been granted discovery in that case. I don't know what they were filing it on, although I read it, and it seems to be based on a lot of public records. And then somehow, they had been able to get the KPNG work papers, because those are incorporated into the complaint. And I'm just wondering, was the bankruptcy court letting people get the documents? I mean, how were people getting all these documents? I do not know where the plaintiffs got their information in that case. What I do know is that as of mid-September of 1998, there were clear storm warnings, as the cases use the term, that there's a probability of fraud with the sudden write-down to a zero value of these residual assets. And you have the accounting issues at the core. So you have KPNG at the center of this proverbial story. In the other case, was KPNG also added later? Yes, it was. So that's how they got the discovery. The same way they were trying to get it here. KPNG was added in the complaint that was filed in September. Right. So the answer to Judge Wardwell's question, which is as far as I was assuming at least, was that in the other case, it proceeded as it did here. That is, they filed a complaint against people other than KPNG. They did a discovery against them, including discovery involving KPNG, at which point they got the information which allowed them to plead in KPNG, which is almost always going to happen with accountants. I mean, isn't it – how is anybody going to know with regard to accountants without discovery sufficient information to plead a defensible complaint? Well, I think as Judge Marsh pointed out in his December 7th of 1999 order relying on the World's Wonder case, where what he referred to was that if there's evidence of extreme deficient conduct, that's sufficient to plead scienter. And he found that there was sufficient evidence of that here, given the write-down in these assets and the sudden change in the fact that the other case. You're talking about the other case now. The other case. But in the other case, they did have the work papers. They had work papers in the other case. But in this case, if you go back to December of 1999, when the plaintiffs here filed their second amended complaint, there's paragraph and paragraph of detailed allegations as to why the – Is your ultimate argument that there's a per se rule that if there's a complaint out there alleging in detail something having to do with this case, that's the – that cuts off their inquiry and they can file at that point? Well, there's certainly a per se rule that if the other complaint gives them notice that a certain defendant can be brought in, that there are facts out there that would lead that defendant to – That's the storm warning point. But you're trying to rely on it for the other end. You're trying to rely on it as the end of their inquiry, not the beginning of their inquiry. That's correct. The beginning, the storm warning was clearly in September of 1998. Okay. And by – When did they take – they said they took discovery of KPNG as a third party? Yes. When was that? When was that deposition? Well, there was a production of documents which I believe took place in – I believe it was the fall – it was ongoing. I think it completed, as counsel said, around October of 2000. But I think it's important to focus on that discovery and what they say came out of it, because they say we needed the ICI work papers, and yet to be able to prove scienter allegations against KPNG. But if you look at their operative complaint here, the third amended complaint, their allegations at KPNG start at paragraph 113. They get to, I think, 139. The first paragraph, it describes the members of KPNG's Southern Pacific Funding audit team. And then it goes on in great detail, paragraph after paragraph, talking about the alleged red flags that this audit team didn't notice, various knowledge that this audit team purportedly had, various communications that it had. And so they're relying for their scienter allegations on the knowledge of the SPFC audit team, which contradicts their argument about, well, we needed – there's these two separate audit teams, and there's some sort of wall between them. And also – So what you're basically saying is that while my problem is a theoretically accurate problem, i.e., heck, they can rely on the complaint, that in the end all they really did do was rely on the complaint. Yes. Is that essentially what you're saying? That's correct. And what they added to the complaint with the benefit of the ICII discovery was basically one line. They say in their reply papers, well, we needed to be able to allege that or we needed to allege that the ICII audit team reviewed the workpapers. And they say that simply KPNG was aware of and reviewed the contents of ICII and SPFC's report of directors' minutes as part of its external audit of both companies. Did that help them? Maybe it did. Maybe it gave them an iota of additional evidence. But they already had enough to plead scienter. Or not. Or maybe not, because maybe they didn't really have the information behind it. But in either case, they didn't have more as a result of the years, really what you're saying. Yes. But they also would have known that from the 1997 annual report with the audit statement of both companies. Yes. I mean, that's obviously public information. Anyway, you're going over your time. Do you want to see? Thank you, Your Honor. Good morning. May it please the Court, Frederick Levin, for the individual former officers and directors of Imperial Credit, Mr. Snavely, Mr. Sugarman, Mr. Bolani, Mr. Plantico. The plaintiffs in their briefs tried to make out essentially a procedural case that Judge Wilson had abused his discretion. I think there's ample evidence in the record that he did not abuse his discretion, and in particular, the issue of the whole two-year delay in ruling on the ex parte application to lift the stay. Well, that doesn't really matter. The fact is he didn't rule on it when it was made, and he didn't rule on it until the point that he decided to summary judgment. Forget the two years. That's not relevant. But it is true that he did not rule on it when it was made, and he cut off their ability to complete the discovery that they had planned within the period. So the question is why is that not an abuse of discretion? Well, first of all, it was not an abuse of discretion because he properly concluded that they had not exercised diligence in taking discovery. Now, why does that matter? If somebody says to you, let's leave aside for the moment the fact that they forget the stay by filing the motion. But if somebody says to you in a scheduling order early on, you're going to be able to have discovery until X date, and you map out a discovery plan as a lawyer, and you plan to do a certain number of depositions at the end, and you have some reason to do that, it's not unusual, as you know. And you schedule them, and then all of a sudden something happens and they say, whoops, you can't do it. Now, why isn't that due diligence? If you had a plan and they had some scheduled depositions, others that they were planning to do, why is the fact that they didn't do it earlier when they had time to do it in not diligence? Because at the time Judge Wilson considered the issue of whether to give them a continuance. It was at the summary judgment hearing, but that issue was before him. And he considered the totality of the circumstances and came, I believe, to the very conclusion that I heard this morning, which is that the discovery they wanted to take was irrelevant to the issue. Well, that's a different problem. All right? That's a different problem. And it may be that what he did is not, doesn't matter with regard to his ultimate summary judgment decision because anything they had gotten then wouldn't have made a difference. But that wasn't the position that you were espousing a moment ago. Well, I think the position I was espousing was that he had not abused his discretion because he considered the totality of the circumstances that were before him. The position you were espousing was that he was correct to say that he could cut off the discovery, he could not grant the stay because they hadn't exercised due diligence. And that doesn't seem to me to be correct. It may be that he could say, well, this all doesn't matter at this point because nothing that you told me that you would have gotten during that period wouldn't make any decision difference to my ruling. And we can go on to that question. But that seems to me to be a different problem from whether their diligence before that point has any pertinence. Yeah. The way I understand what he did was he considered their diligence beforehand and the relevance of the evidence that they sought to obtain. And that might be the point I was trying to make is that all was considered on April 30th. And then it's a question of his abuse of discretion. And I think in considering the totality of the circumstances, he did not abuse. It's more like a harmless error problem to me. Yes. I fully agree that at the end of the day it doesn't matter because the hole in their case that I mentioned earlier was the absence of expert testimony. And none of the evidence that they wanted to seek in discovery afterwards had anything to do with experts. And so that's really where I want to focus is that the reason that the plaintiffs lost on summary judgment and should have lost on summary judgment is that they did not present a triable question on the basic building blocks of their case. To prove causation and damages, you need a proper damages study. A proper damages study. Let's just back up a minute. I mean, I think you're going to the place that I want to go to. But before that, you also had contended that they hadn't sufficiently proved in the overvaluation. That doesn't seem right to me. It seems to me that there was indisputably overvaluation for some part of this time period. And that's enough to get them beyond summary judgment without an expert. I don't think I can agree with that. And here's why. Is what they have evidence of was that on September 14th, between September 14th and 12th. Well, unless it all happened on September 14th and didn't happen on September 13th, 12th or 11th, they're beyond summary judgment. You have evidence of overvaluation, but due to what? That's the causation question. That is the causation. But what I'm saying is as to overvaluation, that just seems indisputable and they need an expert to establish that the issue here was whether the financial statements were accurate during the class period. Well, they might have a problem in proving some large part of the class period, but all they need to do right now is get beyond summary judgment and get to a trial. And they might, you know, lose on every day up until August 15th because they can't prove it, but they have more than zero. Well, they have more than zero, but I don't think they have enough for a trial question. On the issue of whether there's a misstatement in the financial statements, because all you have, all their evidence was, is that there was a price drop at the end. That doesn't tell you what, whether there was a material misstatement during the class period. That tells you that, you know. So the whole thing could have happened, I think there was another major misstatement that they were relying on in August, so. There was, there was, all you know is that there was a price drop between September 14th and October 1. And there was an announcement, but the announcement did not concern just the residual valuations. It had to do with what was going on in the marketplace for asset-backed securitizations. So you need something more than the possibility that there was a material misstatement during the class period. You need evidence of that. You need something that puts a trial question that there's a probability of a material misstatement, and they don't have that. All they have is a price drop. But I think that the ultimate flaw, the ultimate flaw in their case is that there is the issue of proving the fact of damages and the amount of damages. And what they have, all they have, is an expert report that assumes away the analysis, the Merrick report on damages, which assumes that there was a zero value to the SPFC residuals during the class period with no analysis at all. And, again, you cannot infer from a price drop that the price drop was all attributable to the alleged inflation in the residual valuations. And there was no analysis at all. And what they talked about was, well, there was Mr. Horowitz. But Mr. Horowitz, one, the damages expert didn't rely on Mr. Horowitz. Doesn't even talk about him. So Horowitz is beside the point, can't form the foundation for their damages report because he didn't talk about him. But what Mr. Horowitz didn't do a valuation of the residuals. He made some assumptions, and based on assumptions said they might have been worth X as to only two of the residual value of the SPFC residual valuations. And his work was all done at the latest six months before the class period. So there's still no evidence as to the. Based on what numbers? Based on numbers. I'm sorry? His valuation done six months before the onset of the class period was based on what numbers? Numbers as of June 30, 1997. And he didn't do a valuation. He did something called a sensitivity analysis, which says, here's what the modeling people at SPFC say. Now, if I make some changes into their assumption, what happens? It could be this. It could be that. It could be another thing. That is not the same as giving an opinion that the actual value of the residuals was X at a particular time. He never did that, even as of June of 1997. Now, there was also, Mr. Gregoric mentioned the Moore report. He said, well, Mr. Moore talked about the residual values. Well, Mr. Moore was not a residual valuation expert. He was an accountant. And he knew he was an accountant, and he knew he wasn't a residual valuation expert. So he needed someone to be a residual valuation expert, but the plaintiffs didn't retain a residual valuation expert. In my experience with this kind of litigation, there's usually some sort of regression analysis that goes on. Yes. And we see that in the reports. Well, the regression analysis point goes to Mr. Merrick, the damages expert. Usually what you see is an event study, which is a statistical regression analysis that factors out, takes that price drop at the end, and then factors out unrelated clauses, that is, clauses unrelated to the alleged tortious conduct here, whether the market was adversely affected by changes in interest rates and changes in the assets-backed securities market. There's no regression analysis in Mr. Merrick's report, and that's precisely why Judge Wilson excluded that report. Then Mr. Gregoric says, well, he didn't do a regression analysis, but he did something almost as good called an events – an event analysis. The problem here is that's one that you should – can and should reject as a matter of reading, not as a matter of law, because if you read Mr. Merrick's report, he does no event analysis. He does not consider the external market forces, companies – non-tortious companies, specific events. All he does is assume that based on the price drop, the value of the SPFC residuals was zero, and then everything after that is math. And the whole point of what Judge Wilson was saying is an expert report that assumes away the key component of the analysis, which is for purposes of the out-of-pocket measure of damages, you have to have the difference between the price line and the value line, as set forth by Judge Sneed in his concurrence. Kagan. You did not introduce any expert evidence. We did not. That's – I think where you're going is the issue of whether there was enough to shift the burden to us. And the point is their critical piece of evidence, the only piece of evidence they have is a price drop. Okay? But that does not – Well, they have a bunch of internal statements of people saying things don't look so hot, we don't have any cash. Right. But we're focused now on the issue before the Court is whether they have put forth a triable question of fact as to the true value of the residuals during the class period, because they need that piece of evidence to apply the out-of-pocket measure of damages. So they've got to come forward with a triable question of fact on that. And the mere existence of a – It doesn't have to be done, as I understand, with any precision at all. It has to be essentially that there were misstatements during this period, whether intentional or not, and that there were – and there was reason to believe that the And the question is, did they do enough of that? But that conflates two different parts of the analysis. The damages issue, both the existence of damages, legally cognizable damages, and the amount of those damages, you need a fact. And that fact is what is the true value of the SPFC securities during the class period. And if they want to meet that burden by saying, well, after there was a supposed corrective announcement, the price of the securities dropped, that doesn't tell you anything about what the true value of the residuals were at the time. It tells you it's possible that the residual values were less than they should have been, or less reported. It doesn't tell you that they were, and it doesn't tell you by how much. And to do that, you need the kind of regression analysis that Judge Wardlaw was reporting for some equivalent. This would be a closer case if Mr. Merrick had done something to deal with those issues. He did nothing. So you don't have gradations of proof to worry about here. You have a total absence of evidence, which I don't think is sufficient on the existence of a price drop is not sufficient to shift the burden to us. And even if it were, we've successfully pointed out the total absence of evidence. So on that basis alone, I think the judgment in favor of my clients can and should be affirmed. All right. Well, you've gone over your time, too. Both sides did. And so this case will be submitted. Mortensen v. Snavely is submitted. And we will take up U.S. v. Snavely.
judges: Wardlaw,berzon, Fitzgerald